LUCRETIA G. CHASE & another, Administrators, *vs.* APOLLOS REDDING & others.

A gift of negotiable promissory notes, secured by mortgages of real estate, with proper assignments of the mortgages to the donee, made during the last illness of the donor, who is aware of his condition, and intends the gift as a final disposition of the property, is a good *donatio mortis causa.*

A *donatio mortis causa* will not affect the rights of creditors of the donor.

An administrator, who has admitted claims made against the estate of his intestate before they were barred by the special statute of limitations, and agreed with such creditors to bring a suit for their benefit to recover back a gift *causa mortis* of the intestate, may bring such suit after the expiration of such period of limitation.

In a suit in equity by an administrator to recover, for the benefit of creditors, the subject

of a *donatio mortis causa*, the defendant, if he has not offered, in his answer, to pay the debts, but has denied that the suit can be maintained against him, will not be exonerated from the payment of costs and expenses of administration.

SHAW, C. J.    This is a bill in equity, brought by the plaintiffs as administrators of the estate of George W. Chase, deceased, against Apollos Redding and others, seeking to have certain assignments and transfers of property, made by their intestate prior to his decease, set aside, and the property restored to the plaintiffs, to be administered as the assets of the said estate, and for other relief.

The case was, by mutual consent, referred to Henry Vose, Esq., who has made a report of the facts, which the parties, by their certificate in writing, have agreed shall be taken as the facts of the case.    It will be sufficient therefore to take an abstract of Mr. Vose's report, as a statement of the case, on which the questions before us arise.

It appears that George W. Chase, the plaintiffs' intestate, died, leaving no issue, but leaving a widow, now one of the plaintiffs.    He had formerly been the owner of a farm, which he had sold to William B. Taber, his wife's brother, and received three notes of $1,000 each, secured by mortgage.    Prior to May 1852, domestic troubles and difficulties subsisted between said Chase and his wife, and there were mutual complaints and great want of harmony between them ; they partially separated in May 1852, and in the latter part of the summer of that year he left the neighborhood and probably the State, and she never saw him after the 1st of September 1852.

Chase, the intestate, returned to Massachusetts in 1855, and went to reside in Ware with Apollos Redding, one of the defendants, who had married his sister; he was then laboring under a disease which his physician advised him was incurable, as it proved, and he died in October 1855.    During his sickness, upon deliberation and under advice of counsel, he gave to Apollos Redding, to a niece, daughter of said Redding, who had assiduously attended him, and to a young man whom he had formerly partially adopted, the three notes, secured by mortgage, for $1,000 each, being the whole of his available

property, and proper assignments to secure payment of said sums to the respective donees. These were intended by said Chase as gifts *causa mortis.* It appears that this was nearly, if not quite, the whole of his property, and no assets of any importance came to the administrators.

On reference to Mr. Vose, public notice was given to any persons, having claims against the estate of said Chase, to come in and prove them; and the claims of various persons, specifically enumerated, were proved, amounting in the aggregate to between $400 and $500.

The court are of opinion, upon the case shown, that the gift of the three negotiable notes to the donees respectively, with an assignment of mortgages to secure them, was a good *donatio mortis causa.* It was accompanied with all the incidents required to give legal effect to such a gift. The donor was in his last sickness, and so considered himself, and intended to make a final disposition of the property, in case he should not recover.

As to the character of the thing given, the law has undergone some changes. Originally it was limited, with some exactness, to chattels, to some object of value deliverable by the hand; then extended to securities transferable solely by delivery, as bank notes, lottery tickets, notes payable to bearer, or to order, and indorsed in blank; subsequently it has been extended to bonds and other choses in action in writing, or represented by a certificate, where the entire equitable interest is assigned; and in the very latest cases on the subject in this commonwealth it has been held, that a note not negotiable, or if negotiable, not actually indorsed, but delivered, passes, with a right to use the name of the administrator of the promisee, to collect it for the donee's own use. *Sessions* v. *Moseley,* 4 Cush. 87. *Bates* v. *Kempton,* 7 Gray, 382. For the general principle we refer to 2 Kent Com. (6th ed.) 444; *Parish* v. *Stone,* 14 Pick. 203.

But we think it is equally clear that such a gift cannot avail against creditors. Their right is prior in character. A man is bound to be just before he is generous. Creditors have claims on the justice and legal duty of the debtor; whilst donees, lega-

tees and heirs, having paid nothing, are volunteers, and have claims only on his bounty. Strictly speaking, the only property which any one can give away, voluntarily dispose of without consideration, is the balance which remains after payment of his debts.

But it is objected to this suit, that before it was commenced the two years had expired within which, under the *St.* of 1852, *c.* 294, the creditors could bring suits against the administrators for their debts. But it does not follow that this suit cannot be brought to get in the assets. They made their claims before the statute bar had run against them, and the administrator admitted them; Mr. Bond, one of the administrators, promised to bring this suit as their trustee and for their benefit, and to take no advantage of the statute of limitations.

We may ask, What would have been the legal course, if this arrangement had not been entered into? Each would have brought his action, and to each the administrator might have pleaded *plene administravit,* and each would have been entitled to the common law conditional judgment against the assets when they should accrue — *quando acciderint.*

Or suppose no such plea had been made, and the creditors had had a general judgment *de bonis testatoris;* or suppose the estate had been represented insolvent, and the claims of these creditors had been rejected by commissioners; in either of those cases, it would be the right and the duty of the administrator to proceed and get in the assets as soon as he could, notwithstanding the lapse of two years; and in this way these would have been legally available for the payment of these debts. In such case, we think it was competent for the parties, in order to avoid the unnecessary expense of suits, to accomplish the same purpose by the arrangement actually made. It was not injurious to the defendants, and it is opposed by no bar to a suit against them. Suppose this suit had been brought within two years, under a like arrangement, and pending the suit the two years had expired, would that bar or abate the suit? We think not. The administrator is trustee for creditors, and in that

capacity may avail himself of legal means to get in the trust fund. This objection cannot avail the defendants.

These gifts, if confirmed and held good, do not impair the rights of the widow. Her right is to the property of which the husband died seised or possessed. These gifts have their full effect in the lifetime of the donor, and the property is not in his possession at the time of his decease, and does not come under the administration of the executor. *Parish* v. *Stone*, 14 Pick. 203.

But we think that the defendants, not having, by their answer, offered to pay such debts as might be found due from said Chase, but on the contrary denied that this suit can be maintained for their benefit, cannot exonerate themselves from the payment of the costs in the present suit, with the expenses of administration.

But as the defendants have now offered to pay the debts due to creditors of the estate, and as a reference has already been made to a master, who has reported specifically every debt, and the name of each creditor, and all others are now barred by the statute of limitations, a special decree may be entered to this effect: That if the defendants will proceed and pay to all such creditors the debts reported to be due to them respectively, and produce evidence thereof or of a sufficient tender; also all such reasonable allowance for expenses of administration and costs of this suit, as this court may hereafter allow of and approve; then all further proceedings in this suit shall be stayed, without further costs to either party. In the mean time this case to be continued to the next term of the supreme judicial court for this county, to enable the defendants to comply with the foregoing condition. *Decree accordingly*

*A. L. Soule,* for the plaintiffs.

*N. A. Leonard,* for the defendants.